OPINION
Barbara Couch and Kathleen Grant are appealing from the decision of the trial court which sustained the defendant's objections to a recommendation of the magistrate and awarded the entire estate of Woodson Sandlin to his former wife pursuant to the terms of his Last Will and Testament. The facts of this matter are set forth in the decision of the trial court, as follows:
 In 1976, Woodson Sandlin ("Decedent") and his two daughters, Kathleen Grant and Barbara Couch ("Plaintiffs") received a large sum of money as settlement for the wrongful death of the Decedent's first wife and his daughters' mother, Nancy A. Sandlin. On September 7, 1976, the Decedent and the Plaintiffs executed a contract ("1976 Agreement") wherein the parties outlined the manner in which to divide the settlement proceeds. Pursuant to the 1976 Agreement, the Plaintiffs forfeited legal rights in their mother's property in exchange for the Decedent's promise to enter into an antenuptial agreement prior to remarriage, leaving all assets acquired prior to the marriage to the Plaintiffs. The relevant portion of the 1976 Agreement is as follows:
 Woodson Sandlin specifically agrees that in the event of his marriage, he shall enter into an Antenuptial Agreement with his intended wife which agreement shall provide that at his death all of his assets, both real and personal, acquired prior to the date of his marriage, shall pass to (Plaintiffs) equally or to their children, per stirpes.
 Nevertheless, on August 15, 1987, Woodson Sandlin married Beverly Carol Sandlin ("Defendant") without entering into an antenuptial agreement prior to the marriage. While the Defendant knew about the existence of the 1976 Agreement, she was not aware of its specific terms. However, the Plaintiffs testified that the Decedent told them that he had entered into an agreement with the Defendant.
 On July 4, 1996, the Decedent died testate and his Last Will and Testament was admitted into probate in the Probate Court of Montgomery County. The Defendant was appointed as executrix of the Decedent's estate. In his will, the Decedent left his entire estate to the Defendant.
After the death of their father, the plaintiffs presented a claim to his estate for its full value, citing the 1976 agreement. The claim was denied, and plaintiffs then brought an action in the Court of Common Pleas pursuant to R.C. 2117.12 to enforce their claim. After a hearing, the magistrate found for the plaintiffs and awarded them a judgment in the amount of $202,500.00 plus statutory interest.
The defendant, as executor of the estate, filed objections to the magistrate's decision, which the trial court sustained and overruled the magistrate. On appeal, the plaintiffs-appellants set forth the following two assignments of error:
 1. THE JUDGE ERRED IN OVERTURNING THE DECISION OF THE MAGISTRATE BY FAILING TO RECOGNIZE BEVERLY CAROL SANDLIN, IN HER CAPACITY AS THE EXECUTOR OF THE ESTATE OF WOODSON SANDLIN, DECEASED, AS THE TRUE DEFENDANT, RATHER THAN BEVERLY CAROL SANDLIN, INDIVIDUALLY OR AS SURVIVING SPOUSE.
 2. THE JUDGE ERRED BY ENFORCING THE TERMS OF THE LAST WILL AND TESTAMENT OF WOODSON SANDLIN, OVER THE CONTRACT ENTERED INTO BETWEEN THE APPELLANTS AND THE DECEDENT, ON SEPTEMBER 7, 1976.
The first assignment is not a true assignment of error. It does not attack any specific ruling of the trial court. Rather, it seems to insinuate that the trial court's decision was based upon sympathy for the defendant in her individual capacity. We find this suggestion not only demeaning, but totally unsupported. The trial court clearly in its decision recognized the capacity of the defendant as the executor of the estate of her late husband.
The first assignment of error is overruled.
The second assignment of error merely argues that the trial court's decision was wrong on the merits, and that the decedent's Will should be subordinated to the terms of the 1976 agreement. We overrule this assignment also. The 1976 agreement constituted a promise by the decedent to enter into an antenuptial agreement barring his new wife from claiming any of his property that he owned at the time of the remarriage. Such an agreement is completely unenforceable as it would require the consent of a third party not a party to the agreement between the decedent and his daughters. Moreover, the law in Ohio is clear that a decedent may leave assets to a spouse by Will that exceed those set aside in an antenuptial agreement for the same spouse. Codner v.Caldwell (1951), 156 Ohio St. 197; Bowen v. Bowen (1977), 34 Ohio St. 164;Walter v. Pugh (1945), 30 O.O. 561, 564. Thus, even if the decedent had managed to persuade his intended new bride to sign an agreement which divested her of all rights to his estate as it would exist at the time of their marriage, he still, by Last Will and Testament, could leave all of his estate to his new wife in derogation of the 1976 agreement.
The appellants argue that it would be unjust to them not to receive their father's assets since they had apparently bargained away their claim to at least part of the proceeds of the wrongful death action. However, this argument cuts both ways. How just is it for the second wife to lose her entire share of the estate after living with the decedent for some years, bearing him a son, then marrying him and residing with him for about nine more years? The testimony at the hearing conducted by the magistrate provides ample evidence that the defendant, both before and after the marriage, managed the bar they owned and supplied substantial sums of cash from that operation to the decedent and supported him in many other ways. Furthermore, the record also reveals that the decedent kept part of his promise to his daughters because he transferred several parts of the real estate to them after his remarriage. The testimony at the hearing casts doubt whether his new wife, defendant herein, would have signed away her dower rights to these properties if she had been informed by her husband that he planned to give all his estate to his two daughters and leave very little for her. She testified that she "would have lived a lot differently" if she would have known those were his intentions. Tr. 142.
The issue of whether the contract to make an antenuptial agreement is void for public policy is also raised in this case, but we find it unnecessary to reach that issue and specifically decline to address it.
Both assignments of error are overruled, and the judgment is affirmed.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
Charles W. Slicer, Jr., Ron Kozar, Hon. Adele M. Riley.